IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

COBRA CAPITAL, LLC, et al., etc.,  )
                                   )
                Plaintiffs,        )
                                   )
     v.                            )    No.  08 C 6884
                                   )
POMP'S SERVICES, INC., et al.,     )
                                   )
                Defendants.        )

                         MEMORANDUM

     This lawsuit has grown out of a transaction in which Cobra

Capital LLC ("Cobra") financed the purchase by Pomp's Services,

Inc. ("Pomp's") of an expensive wood grinder through an equipment

lease.  Pomp's (acting through its principal Frank Pomprowitz

["Pomprowitz"]) believed that at the end of the agreed-upon 48-

month lease term it had a $1 purchase option (the familiar

hallmark of a straight financing deal through the use of an

equipment lease, rather than via loan documents coupled with a

secured interest in the equipment as collateral), while Cobra

contends that the transaction was a true lease, under which the

grinder became its property at the expiration of the lease term.[1]

     Earlier this year (on February 23) this Court issued its

_____

     [1] "True lease" may not be fully descriptive of the
arrangement, for that term normally denotes a transaction in
which someone who is already the owner of some property (real or
personal) grants a possessory interest in that property to
another party--the lessee--for a defined term in consideration of
the lessee's payment of rent during that term.  Here Cobra had no
prior interest in the grinder (which Pomp's had located for its
own acquisition and use) before the proposed financing
transaction was presented to it.

memorandum opinion and order ("Opinion") that denied a motion for partial summary judgment that had been filed by Pomp's. To be sure, there is no question that the documents prepared by Cobra and signed by Pomprowitz on Pomp's behalf did not contain the $1 purchase option that Pomprowitz had understood was an integral part of the transaction. Though the Opinion held that factual issues preluded a judgment as a matter of law in Pomp's favor, it appeared as well that such issues also precluded judgment as a matter of law in the opposite direction.

In part the Opinion included an Appendix that dealt with the deposition of Steven Kochensparger ("Kochensparger") of insurlease, the broker that brought Pomp's and Cobra together. That deposition had been taken at Cobra's request so that it could file a final supplemental response to Pomp's motion after the previously established briefing schedule had already been completed. As the Appendix reflected, Kochensparger corroborated Pomp's version of the situation but did not alter the outcome of the motion.

Now, as chance would have it, two instances of the phenomenon of serendipity that is often triggered by this Court's regular reading of slip opinions from our Court of Appeals have led to the issuance of this memorandum.[2] It will be remembered

---

[2] This statement in the text should not be misunderstood. This Court is not suggesting that the recent opinions are precedential for purposes of this case. It is rather than the

that after Cobra's President Dale Kluga ("Kluga") had confirmed that Pomp's required monthly lease payments would be 2.70% of the amount to be financed by Cobra, Kochensparger inquired as to Cobra's interest in a possible restructuring of the transaction "with a 20% residual option" on the basis that such a restructuring "would lower Pomp's monthly 'rental expense.'" Kluga responded by rejecting that alternative arrangement because having to rely on that residual payment would increase the risk for Cobra--but he said not a word about the telltale admission inherent in his email response.[3]

It is in that light that those recent caselaw developments have given this Court pause as to the perspective from which this action may potentially be approached. Up to now this Court has spoken to the parties of the possible applicability of the concept of mutual mistake, even while recognizing the difficulty that such an approach might pose in light of some of the evidence

---

opinions have suggested potential alternative approaches to the controversy here, and that has occasioned a revisit to the Kochensparger deposition and its exhibits.

[3] Kochensparger's request had been embodied in his December 14, 2005 email to Candace Brenner of Cobra and also in Kochensparger's December 16 email to Kluga. Though the request was rejected by Cobra as stated in the text, such rejection is totally irrelevant to the point being made here--that it must be viewed as strongly corroborative not only of Pomprowitz's understanding, but also of Kluga's as well, that the rental payments that Cobra had quoted necessarily contemplated no residual payment, jibing with the nominal ($1) "purchase" price at the conclusion of the "lease" term.

3

adduced by Cobra. But that is not necessarily the only way to skin the cat.

In this instance Kluga's response plainly indicated that Cobra, even while knowing that both sides to the parties' proposed business transaction shared an understanding as to its terms (including the absence of a residual value inuring to Cobra), nonetheless deliberately prepared a fine-print complex document totally at odds with that mutual understanding. That scenario might, for example, bring into play the potential for an equitable reformation of the document:

> 1. on a theory of unilateral mistake by one party (Pomprowitz's failure to catch the omission of the ¶1 "purchase" option from the lease form) and knowing silence or inequitable conduct on the part of the other (Cobra) or
>
> 2. if Cobra as the party preparing the document would prefer not to be tarred with the brush of an intentional effort to deceive Pomp's as the other party, perhaps the concept of a scrivener's error could also call for such an equitable reformation of the document.

As can be seen, either of those prospects would call for providing information about just how the Equipment Lease Agreement was generated within Cobra--who did the drafting and who gave the instructions for that to be done. This Court is unaware as to what if any discovery has taken place in those

4

areas, either by paper inquiry or through depositions. As it happens, the next status hearing had previously been scheduled for next week--on September 1--and counsel for both sides will be expected to be prepared to discuss this matter at that time.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 25, 2010